The Honorable David M. Haak State Representative 9 Wood Place Texarkana, AR 71854-3333
Dear Representative Haak:
I am writing in response to your request for my opinion on two questions I will paraphrase as follows:
 1. Assuming Texas law would so allow, would A.C.A. § 25-20-101 et seq.
authorize an interlocal cooperative agreement for mutual assistance in law enforcement between the Texarkana, Texas and Texarkana, Arkansas police departments?
 2. If so, would the Texas police officers have the same law enforcement authority as the Arkansas police officers while the Texas police officers were present in Texarkana, Arkansas?
RESPONSE
In my opinion, the answer to your first question is "yes"; so long as Texas law does not dictate otherwise, nothing would preclude the two cities from agreeing to cooperate in law enforcement. However, with respect to your second question, although the law is not entirely clear on this matter, I do not believe that an Arkansas city could by interlocal agreement authorize the officers of a Texas city to make arrests in Arkansas without specific statutory authority in Arkansas or without obtaining the certification required under A.C.A. § 12-9-106
(Repl. 1999).
Question 1: Assuming Texas law would so allow, would A.C.A. § 25-20-101et seq. authorize an interlocal cooperative agreement for mutualassistance in law enforcement between the Texarkana, Texas andTexarkana, Arkansas police departments?
In my opinion, the answer to this question is "yes."
The Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., (Repl. 2002 Supp. 2003), provides for cooperative enterprises between or among various "public agencies." Included within the category of "public agency" are any "political subdivision of this state" and any "political subdivision of another state." A.C.A. §§ 25-20-103(1)(B) and -103(1)(D).
I am struck by the liberality of the legislature's statement of purpose in the Interlocal Cooperation Act:
 It is the purpose of this chapter to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.
A.C.A. § 25-20-102.
With respect to the range of permissible agreements under this act, A.C.A. § 25-20-104(a) provides:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law and jointly with any public agency of any other state of the United States which has the same powers, privileges, or authority, but only to the extent that laws of the other state or of the United States permit the joint exercise or enjoyment.
(Emphasis added.) See, e.g., Ark. Op. Att'y Gen. No. 97-328 (approving an interlocal agreement between Union County, Arkansas and Claiborne Parish, Louisiana). Assuming, then, that the state of Texas would permit an interlocal agreement of the sort you propose, and given that the police departments of Texarkana, Arkansas and Texarkana, Texas both have law enforcement authority within their respective jurisdictions, there would not appear to be any bar precluding the two cities from entering into an interlocal agreement for "mutual assistance in law enforcement."Compare Ark. Ops. Att'y Gen. Nos. 2002-254 (approving an interlocal agreement among Pulaski County and the cities of Little Rock, North Little Rock, Maumelle, Sherwood and Jacksonville coordinating law enforcement efforts during emergencies within the area embraced by their collective boundaries); 2002-130 (approving an interlocal agreement between the city of Little Rock and the University of Arkansas at Little Rock, under the terms of which the parties would coordinate law enforcement protection during emergencies on certain designated property).
However, I believe the scope of this cooperation is subject to the significant limitation that Texas law enforcement officers would in all likelihood be precluded from making arrests in Arkansas without meeting the certification requirements set forth at A.C.A. § 12-9-106.[1] See
A.C.A. § 16-8-106(b) (Supp. 2003) (affording arrest authority to certified law enforcement officers). I appreciate that an interlocal agreement extending the arrest authority of certified Texas law enforcement officers into Arkansas would appear to comply with the above quoted provisions of A.C.A. § 25-20-104(a), since those Texas officers have arrest authority in their home jurisdiction. Nevertheless, I do not believe this fact in itself warrants skirting an express legislative directive that only law enforcement officers certified in Arkansas may make arrests.[2] I believe the appropriate approach to this question is dictated by the principle that a general statute does not apply where there is a specific statute governing a particular subject matter. Donohov. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). The Interlocal Cooperation Act provides a general framework for determining when political subdivisions might undertake joint enterprises. However, even though the conditions of the Act have been met in the present case, I do not believe they can serve as a basis for ignoring the express terms of a statute defining the conditions for making arrests in Arkansas.
I am reinforced in this conclusion by the fact that the legislature on various occasions has expressly authorized by statute limited interstate cooperation between or among law enforcement agencies. For instance, A.C.A. § 16-81-106(h) (Supp. 2003), acknowledging the permissibility of doing so under Article 1.124 of the Texas Code of Criminal Procedure, authorizes a certified Arkansas law enforcement officer to act in Texas with the same authority as a certified Texas law enforcement officer under certain circumstances involving the transportation of Arkansas inmates.[3] In addition, A.C.A. § 12-16-201 (Repl. 1999) authorizes the creation of multijurisdiction enforcement groups, organized pursuant to the Interlocal Cooperation Act, in adjoining counties of Arkansas and other states for the enforcement of drug and controlled substance laws.See also A.C.A. § 16-81-106(g)(13) (Supp, 2003) (affording arrest authority to "[m]embers of federal, state, county, municipal, and prosecuting attorneys' drug task forces" but not listing certified law enforcement officers from another state among the group of officials who, although not certified in Arkansas, are authorized to make arrests in the state).
These statutes clearly raise the question of whether the legislature intended to foreclose any interstate arrest authority by local law enforcement officers except with regard to the transportation of Arkansas inmates and the enforcement of drug and controlled substance laws. As the court stated in Gazaway v. Greene County Equalization Bd., 314 Ark. 569,575, 864 S.W.2d 233 (1993): "The phrase expressio unius est exclusioalterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co.,296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390,663 S.W.2d 930 (1946)." In my opinion, this principle supports the conclusion that the only out-of-state local law enforcement officers authorized to make arrests in Arkansas are the ones specifically named in the above referenced statutes, and only then under the conditions set forth in the statutes.
Question 2: If so, would the Texas police officers have the same lawenforcement authority as the Arkansas police officers while the Texaspolice officers were present in Texarkana, Arkansas?
As reflected in my response to your first question, I believe the answer to this question is "no," since a Texas law enforcement officer will not have the Arkansas certification required to authorize him to make arrests in Arkansas.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] With respect to the requirement that only a certified officer can make warrantless arrests, I should note that A.C.A. § 12-9-108(a) (Repl. 1999) provides that actions taken by a law enforcement officer will not be held invalid simply because the officer fails to meet the standards and qualifications required for certification by the Arkansas Commission on Law Enforcement Standards and Training. In an opinion denying a petition for a writ of prohibition seeking to prohibit a criminal trial, the Arkansas Supreme Court has applied this statute to support an uncertified law enforcement officer's issuance of a citation for driving under the influence. McDaniel v. State, 309 Ark. 20, 826 S.W.2d 286
(1992). In the course of its extremely brief analysis, the court suggested that an uncertified law enforcement officer is "vested with the authority to make arrests." Id. at 22. However, I do not read this opinion as suggesting that A.C.A. § 16-81-106(b) has been repealed by implication by A.C.A. § 16-81-108. Rather, I read it as suggesting only that a criminal defendant cannot avoid a trial or adjudication of guilt by arguing that the officer who arrested him lacked statutory authority to do so. This conclusion strikes me as consistent with the analysis inState v. Henry, 304 Ark. 339, 802 S.W.2d 448 (1991), in which the court held that that the actions of unqualified officers would not trigger application of the exclusionary rule in a subsequent trial. In support of its conclusion, the court noted that an uncertified officer's making an arrest was not "unlawful police conduct" of the sort that implicated the Fourth Amendment. Id. at 342. The court further declared that A.C.A. §12-9-108 "`is a statute which deals with standards for employment,'" not one "`which deals with police conduct.'" Id. (quoting Moore v. State,303 Ark. 514, 798 S.W.2d 87 (1990))
In my opinion, then, McDaniel stands only for the proposition that a warrantless arrest by an uncertified law enforcement officer will withstand a challenge by a defendant seeking to avoid trial or punishment based upon the officer's status. See Pipes v. State, 22 Ark. App. 235,237, 738 S.W.2d 423 (1987) (holding that an arrest by an uncertified officer, although "invalid," "has never been viewed as either a bar to subsequent prosecution or a defense to a valid conviction") (citingUnited States v. Crews, 445 U.S. 463 (1980); 5 Am.Jur.2d Arrest 116 (1962)). In short, I believe the legislature continues to subscribe to the proposition that an arresting officer should be certified.
[2] In this regard, I should note that I question whether a Texas law enforcement officer would even qualify for certification under Arkansas law. A.C.A. § 12-9-104(6) (Repl. 1999) authorizes the Arkansas Commission on Law Enforcement Standards and Training to "[a]pprove institutions and facilities to be used by or for the state or any political subdivisionthereof for the specific purpose of training law enforcement officers and recruits." (Emphasis added.) The highlighted language would appear to preclude training and certifying law enforcement officers from another state.
[3] These circumstances are extremely limited, consisting of actions taken "in the discharge of an official duty" under the following conditions:
(1) During a time in which:
 (A)(i) The law enforcement officer from the State of Arkansas is transporting an inmate or criminal defendant from a county in Arkansas that is on the border of Texas to a hospital or other medical facility in a county in Texas that is on the border between the two (2) states.
 (ii) Transportation to such a facility shall be for purposes including, but not limited to, evidentiary testing of said inmate or defendant as is authorized pursuant to laws of the State of Arkansas, or for medical treatment; or
 (B) The law enforcement officer from the State of Arkansas is returning the inmate or defendant from the hospital or facility in Texas to an adjoining county in Arkansas; and
(2) To the extent necessary to:
 (A) Maintain custody of the inmate or defendant while transporting the inmate or defendant; or
 (B) Retain custody of the inmate or defendant if the inmate or defendant escapes while being transported.